John H. Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Tel.: (415) 561-9601; (415) 561-9603 / Fax: (415) 561-9609
E-mails: john@scottlawfirm.net
liza@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
527 Mendocino Avenue Ste. B
Santa Rosa, CA 95401
Tel. (707) 595-4414 / Fax: (707) 851-1983
E-mail: izaak@izaakschwaiger.com

Attorneys for the Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARQUS MARTINEZ and DANIEL BANKS,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF SONOMA, STEVE FREITAS, MAZEN AWAD, BRIAN GALLOWAY, and DOES 1-50, inclusive.<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. **§ 1983 FOURTH AMENDMENT**<br>2. **§ 1983 EIGHT AMENDMENT**<br>3. **§ 1983 SUPERVISORY LIABILITY**<br>4. **§ 1983 CUSTOMS, POLICIES, AND DELIBERATE INDIFFERENCE**<br>5. **§ 1983 RATIFICATION**<br><br>*JURY TRIAL demand* |

**INTRODUCTION**

This complaint is brought on behalf of two out of over twenty young men whom defendants systematically and sadistically attacked on May 28, 2015 in the Male Special Module of the Sonoma County Main Adult Detention facility in Santa Rosa, California.

In response to hearing defendants beating up several inmates in the module, plaintiff Martinez had a panic attack. In response to Martinez's plea for help, jail staff repeatedly beat him up too. Plaintiff Banks attempted to avoid an assault by lying face down on his mattress to show submission. This strategy failed. Defendants savagely attacked and punished Banks, along with every other inmate. An uninterrupted stream of nearly identical attacks occurred up and down the housing unit over the span of over five hours, under the direction and supervision of Sgt. Galloway, Lt. Awad, and other supervisory staff.

Despite each inmate being confined to a locked 6-by-10 foot room, all twenty-five men on the unit were removed from their cells and beaten. The Special Emergency Response Team (SERT) arrived in black body armor and ski masks and began extracting inmates from their cells, one at a time. SERT did not request nor wait for compliance from the inmates.

For five-and-a-half hours, the jail was filled with screams, cries of pain, and the sound of inmates begging the deputies to stop. Plaintiffs now seek compensatory and punitive damages in addition to appropriate injunctive relief to remedy an ongoing pattern of egregious Constitutional violations and human suffering occurring in the Sonoma County Main Adult Detention facility.

**JURISDICTION & VENUE**

PLAINTIFFS Marqus Martinez and Daniel Banks allege as follows against defendants.

1.   This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2.   The claims alleged herein arose in the County of Sonoma in the State of California. Venue for this action lies in the United States District Court for the Northern District of California under 28 U.S.C. §1391(b)(2).

**PARTIES**

3. Plaintiffs Marqus Martinez and Daniel Banks (hereinafter "plaintiffs") are residents of Sonoma County, California.

4. Defendant County of Sonoma is a public entity situated in the State of California and organized under the laws of the State of California.

5. At all relevant times, defendant Steve Freitas was the Sheriff and elected official of the County of Sonoma. Plaintiffs allege on information and belief that Sheriff Freitas is legally and ethically responsible for supervising and managing the jails in Sonoma County and, in that capacity, is responsible for protecting the health and safety of both inmates and staff. Sheriff Freitas and his sworn staff, while acting under color of law, have taken an oath to uphold the Constitution of the United States.

6. At all relevant times, defendant Mazen Awad was an employee of the County of Sonoma and a Lieutenant for the Sheriff's Office. Plaintiffs allege on information and belief that Lieutenant Mazen Awad was the Watch Commander and/or the highest ranking person in command during the events alleged herein that occurred on May 28, 2015. In that capacity Lt. Awad directly and intentionally authorized, encouraged, and personally participated in the egregious Constitutional violations alleged herein. Plaintiffs also have information and believe that the acts and omissions alleged herein are consistent with a pattern and practice of excessive and unnecessary force and punishment, maliciously and sadistically directed at inmates by Lt. Awad and those under his supervision and direction.

7. At all relevant times, defendant Brian Galloway was an employee of the County of Sonoma and a Sergeant for the Sheriff's Office. Plaintiffs allege on information and belief that Sergeant Brian Galloway was on duty and acting in his capacity as a supervisor during the incident alleged herein on May 28, 2015. In that capacity Sgt. Galloway acted in concert with Lt. Awad to directly and intentionally authorize, encourage, and participate in the egregious Constitutional violations that occurred herein. Plaintiffs also have information and believe that the acts and omissions alleged herein are consistent with a pattern and practice of excessive and

unnecessary force and punishment, maliciously and sadistically directed at inmates by Sgt. Galloway and those under his supervision and direction.

8.  The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 50 inclusive, are unknown to the plaintiffs, who therefore sue said defendants by such fictitious names. Defendants DOES 1 through 50, and each of them, were responsible in some manner for the injuries and damages alleged herein. Plaintiffs are informed and believe and thereupon allege that each of them is responsible for the injuries and damages alleged herein.

9.  In doing the acts and/or omissions alleged herein, the defendants, including DOES 1 through 50, acted in concert and/or conspired with each of said other defendants herein.

10.  At all times during the incident, the defendants acted under color of state law in the course and scope of their duties as agents and employees of the County of Sonoma.

11.  Defendants' conduct was authorized, encouraged, condoned and ratified by the County of Sonoma.

## STATEMENT OF FACTS

12.  On May 28th, 2015 at approximately 10:30 a.m., Sonoma County Correctional Deputy Bogdan Panek was performing "soap call" in the Male Special Module of the Sonoma County Main Adult Detention Facility. During Soap Call inmates receive various forms, shower soap, and supplies from a deputy. Inmates may miss soap call for various reasons, including sleeping. In such a case, the sleeping inmate receives no supplies.

13.  Upon arriving at the cell of Giovanni Montes, Deputy Panek knocked and called out to the inmate. Montes, who was sleeping and on heavy medication, did not respond. The deputy repeated his attempts to awaken Montes by pounding on the inmate's cell-door and scraping his keys across the cell window. The noise of the disturbance alerted other inmates who witnessed the following events.

14.  Deputy Panek became verbally hostile with Montes, and told him that he was going to lose his "OCA" or "out-of-cell" privileges for sleeping through soap call. Inmates in Male Special are given one hour of OCA every two days. It is the only time where inmates are

allowed out of their cells to bathe, exchange reading material, or make phone calls. Montes became angry and exchanged words with the Deputy through his cell door.

15. In response, Deputy Panek radioed for the assistance of additional jail staff. Three unknown deputies arrived on the unit. Montes' cell was opened and the deputies entered. They grabbed Montes and threw him to the ground, handcuffed him, then slammed his head into the floor, striking several rapid and violent blows about his head, shoulders, neck, and back. One deputy kicked Montes in the head. Another deployed a Taser against the inmate. Deputies then removed Montes from the unit to administer "yard-counseling," a practice that is common in the jail and routinely involves the application of physical violence to inmates. Deputies dressed in all black wearing ski masks dragged Montes to the shower, ordered him to strip naked, and told the inmate he was their "bitch." While naked and defenseless, deputies threw Montes to the ground and began another round of savage beatings. Following the episode in the shower, deputies dressed Montes in underwear many sizes too small in order to humiliate him in front of the other inmates. They removed him to an elevator and slammed his face into the metal of the elevator's interior, then dragged the inmate back to his cell. Over the course of the next many hours, deputies would return to beat Montes on several other occasions, at one point strapping him to a restraint chair and placing a mask over his head. Montes screamed that he could not breath, but deputies left him bound for half an hour before rehousing him in a padded room.

16. Many of these events occurred in view of Jesus Lopez, whose cell was nearby. Horrified by Montes's treatment, Lopez screamed through the doors at the deputies that what they were doing was wrong.

17. At 11:15 a.m., approximately six more deputies arrived on the unit. These deputies made their way to the cell of Lopez. After a verbal exchange through the cell door in which Lopez repeated his concerns regarding Montes, deputies ordered him to turn around and place his hands behind his back. Lopez complied. Deputies cuffed Lopez through the food-tray slot, opened his door, and threw him to the floor, face first. With his body prone on the concrete, deputies began grinding his face into the floor and pummeling his body, causing injury to his shoulder while yelling "stop resisting!" Deputies repeatedly called Lopez a "bitch" and told him

that he was "in their house now." Lopez cried that the deputies had injured his shoulder. In response the deputies lifted Lopez by his arms causing him excruciating pain, and removed him to the "yard" just as they had Montes.

18. Once in the yard, deputies again threw Lopez to the concrete face first with his hands still bound behind his back. Due to his restraints, Lopez could not break his fall and the subsequent force of the landing caused the air in his lungs to escape rapidly and painfully. As Lopez lay stunned, restrained, and unable to breath, deputies jumped on his back and attempted to fold his legs towards his head. Deputies continued to yell, "stop resisting!" The physical exchange left Lopez with an injured right foot and in serious abdominal pain. Lopez repeatedly told deputies of his injuries and difficulty breathing. His screaming and complaints were met with laughter. Deputy Panek derided Lopez for his complaints, then stomped on his injured foot while returning him to a holding cell. With every medical complaint Lopez made deputies responded sarcastically, "Why? What happened to you?"

19. Later deputies returned to Lopez's cell again and ordered him out of his cell. He informed deputies that he could barely move due to the injury to his foot. The deputies stormed his cell and removed him to the yard again. Again they threw a restrained Lopez onto the ground face first. Deputy Medeiros began grinding Lopez's face into the concrete, asking him "does the concrete feel good on your face?" and reminding the inmate that he was their "bitch," that they were "having fun" beating the inmates, and that they could "do this all day." Lopez cried in pain and requested medical attention, but his cries only met with further punishment from jail staff. Correctional deputies began to push Lopez's legs over his back and toward his neck again as Deputy Medeiros pinned his torso to the ground with a knee. Another deputy then asked Lopez if he "was going to be able to follow orders."

20. At this time Lt. Awad arrived and announced to Lopez that it would be better for him if he started following house rules. Lopez told the lieutenant that what was happening was wrong. The lieutenant told Lopez that he was "sick in the head" and informed him that he was going to be "taught a little lesson."

21.     At the direction of Lt. Awad, deputies then began a third round of violent beatings, punching and kicking Lopez and smashing his face into the concrete. As the beatings continued, the lieutenant told Lopez that he was to blame for the violence. Lopez cried that they were treating him worse than an animal. The response from the deputies was swift.

22.     Lopez felt an unknown deputy punch the back of his neck and other deputies began punching, kicking, and body-slamming Lopez to the point of involuntary defecation. They placed shackles around Lopez's feet and attached them through his handcuffs to a chain secured around his waist. A mask was put over his head and Deputy Medeiros began bashing his face into the floor.

23.     The deputies dragged Lopez to the mental-health unit and stripped him naked. Covered in his own feces, Lopez pleaded for toilet paper. The deputies ignored his pleas, laughed at him, and locked him naked in isolation covered in his own feces for two days. Lopez did not receive medical treatment during this period.

24.     After two days in the mental health module, Lopez was returned to his cell. Deputies had removed all of his personal belongings, including toilet paper, his letters and photographs, and other incidentals. Lopez was left in his closed and locked cell for another four days before being permitted to shower. In addition to his injured foot, Lopez suffered head and abdominal injuries and remained in constant pain for many weeks after the attacks. The window port on his cell door, the only view to the world outside of his tiny cell, was locked closed by Sgt. Galloway for the next thirty days.

**MARTINEZ**

25.     Following the beating of Lopez, correctional deputies systematically closed the windows on every inmate's door. Marqus Martinez, an inmate awaiting disposition of criminal charges who had a documented history of severe anxiety, began begging the deputies to open his window, yelling that he was having a panic attack. The deputies advanced to Martinez's cell and ordered him to back up to the door and place his hands behind his back through the food tray slot so that he could be handcuffed. Martinez complied. Deputies then entered his cell and grabbed

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

him from behind by the arms. Martinez asked what was going on. A deputy replied, "So you want to disturb our unit, huh?"

26.     Deputies removed Martinez from his cell, and with his hands cuffed behind his back, he was thrown face first to the ground, and, was unable to break his fall. Deputies began twisting his wrists over his handcuffs, subjecting Martinez to excruciating pain, while other deputies folded his legs up behind him, applying crushing weight to his chest. Martinez pleaded that he was unable to breath and begged the deputies to stop. He screamed that he would do or say anything the deputies wanted. The deputies said, "Let me hear you say it. Say it! Say, 'This is our house!' We can do this all day." When the deputies finally relented, Martinez realized his leg was injured so badly that it could no longer bare weight. Unable to walk back to his cell, he was dragged back by jail staff. Martinez observed that jail staff were present videotaping some portions of the events.

27.     Back in his cell, Martinez repeatedly called for medical assistance for over an hour with no response. Due to his injuries, he was unable to pick himself up off the floor where the deputies left him. For two more hours he listened to screams of pain and torture from the other inmates as jail staff proceeded down the tier, removing each individual from his cell and subjecting him to similar beatings.

28.     Laying on the floor unable to move, Martinez heard his door open again. Hoping that it was the doctor, the inmate looked up just in time to see the SERT team returning to his cell wearing all black, with their nametags removed and ski masks covering their faces. They entered his cell and attacked him with overwhelming force, kicking, punching, and kneeing him and knocking his head into the floor.  They called him a "bitch" and "a piece of shit." They spat on him and threatened to continue the beatings if he were to ever yell out again.

29.     The SERT team removed Martinez for another round of "yard counseling," then dragged his limp body back to his cell where they left him on the concrete, broken and unable to care for himself. Martinez remained on the floor unable to move for more than twenty-four hours. He was denied medical attention, and despite his pleas, his door's only window was closed for the next thirty days.

- 8 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**BANKS**

30.  While the housing module filled with the screams of other inmates, Daniel Banks, an inmate awaiting disposition for a violation of probation, laid face down on his mattress with his hands behind his back. For hours he had listened to the beatings all around him. He hoped that by his show of submission he would avoid being beaten as well, but the deputies merely saved him for last. His cell door opened and four deputies wearing black entered the small cell. All but one was wearing a ski mask. The four deputies jumped on top of him and began kneeing and punching him in the back and wrenching his arms above his head, causing him excruciating pain. The deputies yelled, "stop resisting!" and smashed a pair of handcuffs around his wrists, causing the metal to cut into him and leaving him with bruising, swelling, permanent nerve damage and pain.

31.  Though face down, Banks turned to see his tormenters, and observed that one was not wearing a ski mask [Medeiros]. He brought his face close to Banks' and yelled, "That's right – get a good look at me, you punk bitch - This is our house!" and spit in his face. The deputies brought Banks out of his cell, down the stairs, and into the yard where the beating continued. Banks was thrown to the ground with his hands cuffed behind his back and landed on his face, causing him abrasions and bruising and swelling around the left side of his head. While prone and defenseless on the ground, one deputy dropped his knee on Banks' neck and began crushing his windpipe. Banks yelled out that he was unable to breath.

32.  The deputies brought him back up the stairs to his cell, threw him on the floor, and told him that everyone knew that he was a "bitch" now (referring to the fact that he was laying face down on his mattress when the guards entered).  Banks was denied medical attention for his injuries for more than twenty-four hours, despite six separate requests for aid. He suffers from serious anxiety and mental health difficulties following the incident.

33.  Defendants' justification for using force against plaintiff Banks on May 28, 2015 in response to his administrative grievance was: "The actions of the deputies on that day were merely a response to your immediate defiance and inciting behavior as well your inability to follow simple instructions."

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**COUNTY OF SONOMA**

34. Plaintiffs have information and believe that the conduct alleged herein was videotaped by jail staff, consistent with the customs, policies and procedures of the Sheriff's Office. The Sheriff's Office's policy was for staff who use force to revise and rewrite their reports after command staff reviewed videotapes to ensure "consistency." Plaintiffs further allege the videotapes of May 28, 2015, as well as other similar incidents, were: (1) reviewed by supervisory staff and, (2) determined to be compliant with the Sheriff's Office's policies.

35. Plaintiffs have information and believe that the acts alleged herein are consistent with a pattern and practice of gratuitous violence and punishment directed at inmates by jail staff, typically under the direction and supervision of Lieutenants and Sergeants. Further, this conduct is part of a culture and course of conduct in the Sheriff's Office that is authorized, encouraged and condoned by Assistant Sheriff Randall Walker and Sheriff Steve Freitas. Accordingly, plaintiffs' injuries were part of a pattern of officially-sanctioned behavior.

36. Plaintiffs' residence in the County of Sonoma and history of being incarcerated in this module on several occasions establish that they face a real possibility of being subject to future, repeated Constitutional violations on the basis of their mere presence at the facility.

### STATEMENT OF DAMAGES

37. As a result of the acts and omissions alleged, plaintiffs suffered general damages including pain, fear, anxiety, and terror and related trauma in an amount according to proof.

38. Plaintiffs sustained serious physical injuries, including permanent injuries, and have also incurred and may continue to incur medical treatment and related expenses in amounts to be determined according to proof.

39. The acts and omissions of the individual defendants were sadistic, wanton, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of plaintiffs. Plaintiffs therefore pray for an award of punitive and exemplary damages against these individual defendants in an amount according to proof.

40. Plaintiffs have retained private counsel to represent them in this matter and is entitled to an award of attorneys' fees and costs.

- 10 -

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
[42 U.S.C. §1983 – FOURTH AMENDMENT - BY ALL PLAINTIFFS AGAINST MAZEN AWAD, BRIAN GALLOWAY AND DOES 1-50]

41. All allegations set forth in this Complaint are hereby incorporated by reference.

42. Defendants jointly and severally violated the plaintiffs' clearly-established rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement as guaranteed and protected by the Fourth and Fourteenth Amendments to the United States Constitution.

43. Under all the circumstances presented in the Male Special module on May 28, 2015, an objectively reasonable officer would have known that: (1) the use of force upon the plaintiffs was excessive and could have led to serious injury or death; and, (2) punishment and punitive conditions of confinement imposed upon plaintiffs were not rationally related to any legitimate government objective, or, were excessive in relation to that purpose.

44. Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the plaintiffs' rights.

45. Defendants' misconduct was the moving force that caused plaintiffs' injuries.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
[42 U.S.C. §1983 – EIGHTH AMENDMENT - BY ALL PLAINTIFFS AGAINST MAZEN AWAD, BRIAN GALLOWAY AND DOES 1-50]

46. All allegations set forth in this Complaint are hereby incorporated by reference.

47. Defendants jointly and severally violated the plaintiffs' clearly-established rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement under the Eighth and Fourteenth Amendments to the United States Constitution.

48. Under all the circumstances presented in the Male Special module on May 28, 2015, an objectively reasonable officer would have known that: (1) the use of force upon the plaintiffs was excessive and unnecessary; and, (2) punishment and punitive conditions of confinement imposed upon plaintiffs were not rationally related to any legitimate government objective, or, were excessive in relation to that purpose.

49. Defendants knew of, disregarded and therefore were deliberately indifferent to plaintiff's substantial risks of serious harm and need for medical care after .

50. Defendants' actions described herein were taken for the purpose to harm or to punish the plaintiffs rather than for any other legitimate government purpose.

51. Defendants acted willfully, sadistically, maliciously, oppressively, and with conscious disregard to the plaintiffs' rights with the purpose of causing harm to the plaintiffs.

52. Defendants' misconduct was the moving force that caused plaintiffs' injuries.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
[42 U.S.C. §1983 – SUPERVISORY LIABILITY
AGAINST STEVE FREITAS]

53. All allegations set forth in this Complaint are hereby incorporated by reference.

54. Steve Frietas' subordinates deprived plaintiffs of their rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

55. Plaintiffs allege on information and belief that Steve Freitas knew or reasonably should have known that his subordinates were engaging in these acts and that their conduct would deprive plaintiffs of these rights, and, failed to prevent them from engaging in such conduct. Alternatively, plaintiffs allege that Frietas acquiesced in plaintiffs' Constitutional deprivations alleged herein or for conduct that showed a reckless or callous indifference to the rights of others.

56. Defendant acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the plaintiffs' rights.

57. Defendant's misconduct was the moving force that caused plaintiffs' injuries.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
[42 U.S.C. §1983 – FAILURE TO DISCIPLINE, POLICIES/CUSTOMS, DELIBERATE INDIFFERENCE
AGAINST THE COUNTY OF SONOMA]

58. All allegations set forth in this Complaint are hereby incorporated by reference.

59. Plaintiffs allege on information and belief that the County of Sonoma has not disciplined staff involved in the May 28th incident and other similar incidents based on the customs, policies, and procedures described in this Complaint.

60. The acts or omissions alleged herein regarding the use of excessive force, punishment, and punitive conditions of confinement in violation of the Fourth, Eighth, and Fourteenth Amendments were, upon information and belief, caused by the Sheriff's Office of the County of Sonoma's (1) failure to discipline officers or (2) official policies, practices or customs or (3) deliberate indifference to the rights of inmates at the jail.

61. Plaintiffs allege on information and belief that the County of Sonoma and Steve Freitas knew or should have known that the alleged acts and omissions would likely result in the Constitutional violations alleged herein.

62. Upon information and belief, plaintiffs allege that these acts and omissions were the moving force that caused plaintiffs' injuries.

WHEREFORE, plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
[42 U.S.C. §1983 – RATIFICATION
AGAINST THE COUNTY OF SONOMA]

63. All allegations set forth in this Complaint are hereby incorporated by reference.

64. Steve Freitas had final policymaking authority for the County of Sonoma concerning the acts of jail staff including all individuals identified herein.

65. Plaintiffs allege on information and belief that Freitas ratified his subordinates' acts because he knew of and specifically approved of them, or, delegated his authority to review and approve of these use-of-force and related conditions-of-confinement incidents to others within his chain of command.

66. Upon information and belief, plaintiffs allege that these acts and omissions were the moving force that caused plaintiffs' injuries.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

**PRAYER FOR RELIEF**

Plaintiffs pray for relief as follows:

1. For compensatory and economic damages according to proof;

2. For general damages according to proof;

3. For an award of exemplary or punitive damages against the individual defendants;

4. For an award of attorney's fees and costs as permitted by law;

5. For injunctive relief designed to remedy the unlawful practices alleged herein, including but not limited to: (a) the appointment of a monitor to review all videotapes and reports regarding use-of-force incidents, including Tasers; (b) an order prohibiting written reports prepared by those involved in use-of-force incidents from being revised or altered based on videotape evidence; (c) an order requiring a copy of all grievances, and the administrative review of each, to be reviewed by the monitor; and, (d) the monitor shall provide quarterly reports to the Court, and plaintiffs' counsel, for a period of three years summarizing his or her evaluation of each use-of-force incident and the outcome of the County's/Sheriff's administrative review of each use-of-force incident. In addition, the Court shall retain jurisdiction for three years and may hold evidentiary hearings, and revise or enter additional orders, as necessary and appropriate.

6. For such other and further relief as the Court may deem necessary and appropriate.

**JURY TRIAL DEMANDED**

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: October 5, 2015

**SCOTT LAW FIRM**

By: /s/ John Houston Scott
John Houston Scott
Attorneys for Plaintiffs